United States District Court
Southern District of Texas

**ENTERED**

September 30, 2016

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANTONIO DUDLEY, | § | |
| TDCJ # 567960, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. H-15-3410 |
| | § | |
| LORIE DAVIS, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER

State inmate Antonio Dudley (TDCJ #567960) ("Petitioner") has filed a federal petition under 28 U.S.C. § 2254, seeking a writ of habeas corpus to challenge the revocation of his parole. Pending is Respondent's Motion for Summary Judgment (Docket Entry No. 11).[1] Also pending are Petitioner's Motion for Entry of Order for Release from Custody (Docket Entry No. 6); Motion for Settlement (Docket Entry No. 8); Motion for Summary Judgment (Docket Entry No. 14); Motion for Discovery and Motion for an Evidentiary Hearing (Docket Entry No. 16); Motion for Judgment (Docket Entry No. 17); Motion for Relief under 28 U.S.C. § 2255 (Docket Entry No. 18); and Motion for Relief (Docket Entry No. 23). The Court has considered the motions, responses, the state court and parole revocation records, and the applicable law, and concludes as follows.

## I.    Background

Petitioner was convicted of attempted murder after a jury trial in the 208th District Court

---

[1] Effective May 1, 2016, Lorie Davis succeeded William Stephens as Director of the Texas Department of Criminal Justice - Correctional Institutions Division. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Davis is substituted in place of Stephens as the respondent in this case.

of Harris County, Texas on October 8, 1990 and was sentenced to 50 years' imprisonment.[2] Petitioner was released on parole on November 15, 2012.[3]

On March 9, 2015, Jessica Kuhre ("Kuhre"), Petitioner's parole officer at the time, received a text from Petitioner's cell phone which stated: "At this time it fills [sic] good to say, you can give me a real good fucking then get your hell out, ve [sic] my life."[4] The message was sent from the same phone number with which Kuhre had been in regular communication with Petitioner.[5] Subsequently, Petitioner's case was transferred to Parole Officer Amy Kiel ("Kiel") in order to balance case loads.[6]

On March 10, 2015, a warrant was placed for Petitioner's arrest based on the above-described text message, for the offense of "sexual harassment," and Petitioner was arrested on March 11, 2015.[7] The charge was later amended in the parole revocation records to show that offense which Petitioner was accused of violating was "harassment" under Texas Penal Code section 42.07.[8]

---

[2] Docket Entry No. 9-3, State Habeas Corpus Record ("SHCR") at 00002-03.

[3] Docket Entry No. 10-1, Parole Revocation Record ("PRR") at 2.

[4] Docket Entry No.10-1, (PRR), at 23; slightly different language at Docket Entry No. 1 (Petition) at 4.

[5] Docket Entry No. 10-1 (PRR) at 23.

[6] *Id.*

[7] Docket Entry No. 1 at 7.

[8] *See* Docket Entry No. 10-1 (PRR) at 4, 20.  At the preliminary hearing, the charge was amended to "harassment" to reflect its name in the Texas Penal Code.  At the time, Petitioner indicated that he understood that he was being accused of having committed the Texas offense of "harassment" pursuant to Texas Penal Code section 42.07.  *See* PRR at 20.  Texas law makes harassment unlawful and punishable as a class B misdemeanor.  Texas Penal Code section 42.07 states, in relevant part:
> Sec. 42.07. HARASSMENT. (a) A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person:
>
> (1) initiates communication and in the course of the communication makes a comment, request, suggestion, or proposal that is obscene;

Hearing Officer Joel Butler ("Butler") presided over the preliminary hearing which was held on March 23, 2015.[9]  Butler heard evidence, including testimony from Petitioner, Kiel, and Kuhre, and concluded that Petitioner had violated the terms and conditions of his parole and that a revocation hearing should follow.[10]  Specifically, Butler determined by a preponderance of the evidence that Petitioner had violated Rule 2, which provides that Petitioner "shall commit no offense against the laws of this State or of any other State or the United States."[11]  Further, Butler concluded at the preliminary hearing that Petitioner had also violated the condition in Rule 9C requiring Petitioner to pay certain fees.[12]

A parole revocation hearing was held on April 1, 2015.  The hearing records reflect that Petitioner briefly came to the hearing just long enough to post a written statement on the door and then left.[13]  Petitioner's written statement was read into the record.[14]  The hearing officer determined that Petitioner violated the Rule 2 condition of his parole by engaging in harassment when he sent Kuhre the offensive text message, but also concluded that Petitioner had not

---

...

(b) In this section:

(1) "Electronic communication" means a transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photo-optical system.

TEX. PENAL CODE § 42.07.

[9] Docket Entry No. 10-1 (PRR) at 19.

[10] *Id.* at 23-24.

[11] *Id.*  at 23.

[12] *Id.*  at 24.

[13] *Id.* at 12

[14] *Id.*

violated the fee condition of his parole.[15]  The Board of Pardons and Paroles decided to revoke Petitioner's parole on the recommendations of (1) hearing officer Butler, (2) a parole analyst, and (3) Petitioner's parole officer; two Board members cast concurring votes in support of revocation, and there were no non-concurring votes.[16]  Petitioner's parole was revoked on April 7, 2015.[17]  On April 28, 2015, Petitioner was transferred to the Garza West Unit in the Texas Department of Criminal Justice, where Petitioner began serving the remainder of his prison term for the attempted murder conviction.[18]

Petitioner's motion to reopen the revocation hearing was denied on June 2, 2015.  On or around June 22, 2015, Petitioner filed a state application for writ of habeas corpus in the 208th District Court, in cause number 534058-E.[19]  The Court of Criminal Appeals denied the application without written order on October 14, 2015.[20]  This § 2254 proceeding, filed on November 9, 2015, followed.

Petitioner does not challenge the substance of his underlying conviction for attempted murder and the attendant 50 year sentence, but instead challenges the substance and procedures that formed the basis for the revocation of his parole. Respondent has filed a Motion for Summary Judgment, to which Petitioner has filed a response in opposition.  The § 2254 proceeding is ripe for adjudication.

---

[15] *Id.* at 11.

[16] *Id.* at 15-16.

[17] *Id.* at 3-5.

[18] Docket Entry No. 1 at 1; SHCR at 00002.

[19] SHCR at 00002.

[20] Docket Entry No. 9-1 (Action Taken Sheet) at 1.

## II.     Standard of Review

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  The moving party bears the burden of initially raising the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial.  *Duckett v. City of Cedar Park, Tex.,* 950 F.2d 272, 276 (5th Cir. 1992).  Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact."  *Hamilton v. Seque Software, Inc.,* 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner,* 18 F.3d 1285, 1295 (5th Cir. 1994)).  The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *United States v. Houston Pipeline Co.,* 37 F.3d 224, 227 (5th Cir. 1994).

While Rule 56 of the Federal Rules regarding summary judgment applies generally "with equal force in the context of habeas corpus cases," *Clark v. Johnson,* 202 F.3d 760, 764 (5th Cir. 2000), it applies only to the extent that it does not conflict with the habeas rules.  *Smith v. Cockrell,* 311 F.3d 661, 668 (5th Cir. 2002), *abrogated on other grounds by Tennard v. Dretke,* 542 U.S. 274 (2004).

The writ of habeas corpus provides an important, but limited, examination of an inmate's conviction and sentence.  *See Harrington v. Richter,* 562 U.S. 86, 103 (2011)  (noting that "state courts are the principal forum for asserting constitutional challenges to state convictions").  AEDPA, codified as amended at 28 U.S.C. § 2254(d), "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt"; it also codifies the traditional principles of finality, comity, and federalism that underlie

the limited scope of federal habeas review.  *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quotations omitted).

AEDPA "bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in [28 U.S.C.] §§ 2254(d)(1) and (d)(2)."  *Richter,* 562 U.S. at 98.  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  *Id*. at 99.

To the extent that Petitioner exhausted his claims, those claims were adjudicated on the merits by state courts.  This Court, therefore, can only grant relief if "the state court's adjudication of the merits was 'contrary to, or involved an unreasonable application of, clearly established Federal law.'"  *Berghuis v. Thompkins,* 560 U.S. 370, 378 (2010) (quoting 28 U.S.C. § 2254(d)(1)).  The focus of this well-developed standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable— a substantially higher threshold."  *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007).  Where a claim has been adjudicated on the merits by the state courts, relief is available under § 2254(d) *only* in those situations "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent.  *Richter*, 562 U.S. at 102.

Whether a federal habeas court would have, or could have, reached a conclusion contrary to that reached by the state court on an issue is not determinative under § 2254(d).  *Id.* ("Even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable.").  Thus, AEDPA serves as a "guard against extreme malfunctions in the state criminal justice systems," not as a vehicle for error correction.  *Id*. (citation omitted); *see also Wilson v. Cain,* 641 F.3d 96, 100 (5th Cir. 2011).  "If this standard is difficult to meet, that is

because it was meant to be." *Richter*, 562 U.S. at 102.

"Review under § 2254(d)(1) focuses on what a state court knew and did." *Cullen v. Pinholster,* 563 U.S. 170, 182 (2011).  Reasoning that "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court," *Pinholster* explicitly held that "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Id.* at 185.  Thus, "evidence introduced in federal court has no bearing on § 2254(d)(1) review." *Id.*

Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys. *Haines v. Kerner,* 404 U.S. 519 (1972); *Bledsue v. Johnson,* 188 F.3d 250, 255 (5th Cir.1999). Thus, *pro se* pleadings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from them. *Haines,* 404 U.S. at 521. Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail,* 975 F.2d 192, 193 (5th Cir. 1992).

## III.  Discussion

Petitioner challenges his parole revocation on the following grounds:

1.  The underlying offense which forms the basis for the revocation of Petitioner's parole, Texas Penal Code section 42.07 (Harassment), is not a criminal offense because it violates the First Amendment.

2.  Respondents engaged in unlawful acts that led to Petitioner's arrest and confinement, by acting with malicious intent to prosecute Petitioner through a revocation hearing.

3.  Petitioner's parole should not have been revoked because Governor Abbott on June 17, 2015 allegedly stated that parolees should not be criminally punished by TDCJ for minor offenses.

4.  There was insufficient evidence for the offense because "mumbled words, obscure references do not make the 'cause' a societal misbehavior, much less the smoking gun for a criminal arrest nor for a criminal prosecution, absent any overt action or specific threats for cause to lock up a person."

5.  Petitioner was denied due process because the witnesses, who were his parole officers, argued the case and acted as prosecutors.

6.  Petitioner was denied due process because he was not appointed counsel.

7.  The hearing officer should not have been a parole officer.

*See* Petition at 3-5.

Respondent contends that claims 1, 3, and 7 are unexhausted, and that Petitioner's remaining claims lack merit.

### A.    Exhaustion of Remedies

As stated above, Petitioner's federal habeas petition is subject to the provisions of the AEDPA. *Lindh v. Murphy,* 521 U.S. 320 (1997).  Under 28 U.S.C. § 2254 of the AEDPA, a petitioner "must exhaust all available state remedies before he may obtain federal habeas corpus relief." *Sones v. Hargett,* 61 F.3d 410, 414 (5th Cir.1995). The doctrine of exhaustion, codified as amended at 28 U.S.C. § 2254(b)(1) and (c), reflects a policy of federal/state comity.  *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).  Those statutes provide in pertinent part as follows:

(b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

(A) the applicant has exhausted the remedies available in the courts of the State; or
(B) (i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b)-(c). Under this framework, exhaustion means that the petitioner must have presented all of his habeas corpus claims fairly to the state's highest court before he may bring them to federal court. *Castille v. Peoples*, 489 U.S. 346 (1989); *Fisher v. State,* 169 F.3d 295, 302 (5th Cir. 1999). "This requirement is not satisfied if the petitioner presents new legal theories or factual claims in his federal habeas petition." *Anderson v. Johnson,* 338 F.3d 382, 386 (5th Cir. 2003). The Fifth Circuit has consistently held that a "'petitioner fails to exhaust state remedies when he presents *material* additional evidentiary support to the federal court that was not presented to the state court.'" *Id.* (quoting *Graham v. Johnson,* 94 F.3d 958, 968 (5th Cir. 1996) (emphasis added by *Anderson* Court)).

Claims regarding parole revocation procedures are cognizable under Article 11.07 of the Texas Code of Criminal Procedure. *Ex parte Evans,* 964 S.W.2d 643, 648 (Tex. Crim. App. 1998) (citing *Bd. of Pardons & Paroles v. Court of Appeals for the Eighth Dist.,* 910 S.W.2d 481, 484 (Tex. Crim. App. 1995)). As with claims pertaining to a criminal trial, a prisoner must file an application for state habeas corpus relief in the court and county in which he was convicted. *See id.* (citing *Ex parte Woodward,* 619 S.W.2d 179 (Tex. Crim. App. 1981); *Ex parte Alexander,* 861 S.W.2d 921, 922 (Tex. Crim. App. 1993)).

Petitioner's pleadings and public records show that petitioner has not presented the following claims in state court: (1) Claim one, regarding the constitutionality of Texas Penal

Code 42.07 (Harassment); and (2) Claim three, regarding Governor Abbott's comments.   The state court records reflect that Petitioner did not fairly present these claims to the state courts in a procedurally proper manner according to the rules of the state courts; therefore, those claims raised in the present petition are unexhausted.[21]   Because there was an available state process to address these claims, petitioner does not satisfy any statutory exception to the exhaustion doctrine.  Accordingly, those claims are subject to dismissal for failure to exhaust.

### B.      Procedural Bar

A procedural bar for federal habeas review occurs if the court, to which a petitioner must present his claims to satisfy the exhaustion requirement, would now find the unexhausted claims procedurally barred. *Coleman,* 501 U.S. at 735 n. 1. Texas prohibits successive writs challenging the same conviction except in narrow circumstances.  TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4(a) (Vernon 2005).  The Texas Court of Criminal Appeals will not consider the merits or grant relief on a subsequent habeas application unless the application contains sufficient specific facts establishing the following:

> (1) the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application; or
>
> (2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt.

*Id.*  The Texas Court of Criminal Appeals applies its abuse of the writ doctrine regularly and strictly.  *Fearance v. Scott,* 56 F.3d 633, 642 (5th Cir. 1995) (per curiam).

Petitioner does not state specific facts to show that the above-mentioned claims in the

---

[21] *See* SHCR at 00007-14 (Grounds for Petitioner's state application for habeas corpus).

pending petition could not have been raised in his state habeas application, nor does he prove that he is actually innocent of the harassment charge. Therefore, petitioner's unexhausted claims do not fit within the exceptions to the successive writ statute and would be procedurally defaulted in state court. *Coleman,* 501 U.S. at 735 n. 1. Such a bar precludes this Court from reviewing Petitioner's claims absent a showing of cause for the default and actual prejudice attributable to the default. *Id.* at 750.

### C.   Due Process

Regarding his remaining claims, Petitioner complains that the following procedures violated his Fourteenth Amendment due process rights: (1) his parole officers maliciously prosecuted him for an offense by using parole revocation proceedings rather than a criminal trial (Claim No. 2); (2) there was insufficient evidence to find that he had committed a criminal offense (Claim No. 4); (3) his parole officers acted as witnesses and prosecutors (Claim No. 5); (4) he should have been appointed counsel (Claim No. 6); and (5) the hearing officer should not have been a parole officer (Claim No. 7).[22]

In order to establish a due process violation, a petitioner must show deprivation of a protected right to which he has a "legitimate claim of entitlement." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex,* 442 U.S. 1, 7 (1979). Under Texas law, when a person convicted of certain crimes is paroled but then has his parole revoked, the offender must "serve the remaining portion of the sentence on which the person was released." TEX. GOV'T CODE § 508.283.

Noting that "the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations," the United States Supreme Court examined what due process requires in the context of a parole

---

[22] *Cf.* Petition at 3-5 *with* SHCR at 00007-14.

revocation.  *See Morrissey v. Brewer*, 408 U.S. 471, 484 (1972) ("What is needed is an informal hearing structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior.").  The high Court concluded that the minimum requirements of due process in the parole revocation context include the following:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Morrissey*, 408 U.S. at 489.

The record reflects that Petitioner was provided written notice of the claims that formed the basis for the preliminary hearing to consider the revocation of his parole.[23]  Petitioner was provided a preliminary hearing and a final revocation hearing and was allowed to attend and present evidence and witnesses, if any, in his defense.[24]  Petitioner was afforded the right to confront the witnesses against him: Kuhre and Kiel were present at the hearing and testified against him.[25]  As discussed below, the record reflects that Butler, the hearing officer, was not Petitioner's parole officer, and Petitioner did not object to Butler's neutrality (or lack thereof) at the hearing.[26]  The hearing officer compiled a summary of the hearing and the evidence against

---

[23] Docket Entry No. 10-1 (PRR) at 3-4.

[24] *Id.* at 6-27.

[25] *Id.* at 7, 19.

[26] *Id.* at 8 ¶ D, 20.

Petitioner, made findings, and recommended that the Petitioner's parole be revoked.[27]  Based on his recommendation and the recommendations of a parole analyst and Kiel, the Parole Board unanimously voted to revoke Petitioner's parole.[28]  Thus, as a general matter, Petitioner received the minimum due process that was required at his parole revocation proceedings.  The Court will address each of Petitioner's specific claims in more detail below.

### 1.    Claim No. 2:  Malicious Prosecution

In Claim Two, Petitioner alleges that his parole officers, Kuhre and Kiel, maliciously prosecuted him in retaliation for the text message.  He alleges that they used parole revocation proceedings to incarcerate him and that this was done with "malicious intent" because he was never indicted or convicted of harassment.[29]

First, Petitioner's contention that a second criminal conviction is required before his parole may be revoked is meritless; parole authorities may consider criminal activities for which he has not even been charged, indicted, or convicted.  *See Maddox v. U.S. Parole Com'n,* 821 F.2d 997, 999 (5th Cir. 1987) ("the commission may consider ... allegations of criminal activity for which the prisoner has not even been charged."); *Villareal,* 985 F.2d at 839 (parole boards may consider charges which were dismissed by the State); *Else v. Johnson,* 104 F.3d 82, 83 (5th Cir. 1997) (*per curiam*) (no due process violation when State considered dismissed criminal charge during parole revocation hearing).

In rejecting the notion that a subsequent criminal prosecution must have occurred, the Supreme Court in *Morrissey* reasoned:

---

[27] Docket Entry No. 10-1 (PRR) at 8, 11-12, 20, 23-27.

[28] Docket Entry No. 10-1 (PRR) at 15-16.

[29] Docket Entry No. 1 at 3.

> Given the previous conviction and the proper imposition of conditions, the State has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial if in fact he has failed to abide by the conditions of his parole.

408 U.S. at 483.   Therefore, the fact that Petitioner had not been indicted and convicted for harassment had no relevance during Petitioner's parole revocation proceedings, and his claim is subject to dismissal on this basis alone.

Second, to the extent that Petitioner contends that his parole officers acted maliciously to prosecute him, this fails to state a viable federal constitutional claim.  *See Albright v. Oliver,* 510 U.S. 266, 268 (1994) (plurality decision) (no federal constitutional right under the Fourteenth Amendment to be free from prosecution except upon probable cause); *Castellano v. Fragozo*, 352 F.3d 939, 953 (5th Cir. 2003) ("no such freestanding constitutional right to be free from malicious prosecution exists").

Moreover, even if Petitioner could state a viable constitutional claim, Petitioner fails to raise a fact issue that he was arrested without probable cause.  The hearing officer in this case made findings based on the evidence that Petitioner had committed a second offense against the laws of the State of Texas.   The hearing officer heard (and found credible) evidence that Petitioner sent the text regarding obscene threats, and further found that this conduct constituted the offense of harassment. Petitioner acknowledges that the text message was sent from his phone to his parole officer, and that he used that phone regularly to communicate with her. Because there was probable cause for arresting Petitioner on the charge of harassment, there is no basis for Petitioner's claim regarding malicious prosecution through parole revocation proceedings.  Petitioner is not entitled to relief on this ground.

### 2.    Claim No. 4 – Insufficient Evidence

Petitioner also claims that there was insufficient evidence to support the finding that he committed harassment because the text was merely mumbled words without overt action. Due process only requires that there be "'some evidence' in the record to support the . . . decision to revoke parole." *Villarreal v. U.S. Parole Com'n,* 985 F.2d 835, 839 (5th Cir. 1993). A revocation proceeding is not part of a criminal prosecution. *Morrissey*, 408 U.S. at 480. The burden of proof in a parole revocation hearing is by a preponderance of the evidence, a considerably lower standard than reasonable doubt which governs criminal trials. *Villarreal,* 985 F.2d at 839. All that is required for revocation is that the evidence and facts reasonably demonstrate that the person's conduct has not been as good as required by the terms and conditions of his release. *See Mack v. McCune,* 551 F.2d 251, 254 (10th Cir.1977).

Although Petitioner categorizes the text message as "mumbled words" which had "no overt action," the state court and parole records reveal that there was evidence to support a charge of harassment in this case. Petitioner's text cannot be summarily dismissed as "mumbled words"; the text contained language of an obscene nature as defined in the statute,[30] and it was communicated via instant message, which is an "electronic communication" as defined in the statute. *See* TEX. PENAL CODE § 42.07(b)(1).

The revocation hearing report also reflects that parole officer Kuhre testified at the preliminary hearing and produced copies of text messages between her and Petitioner. Kuhre testified that the message was sent from the same phone number with which Kuhre had been in communication with Petitioner. The message contained the same style, syntax, and grammar as the preceding messages regarding Petitioner's lost GPS monitor and the subsequent messages

---

[30] The statute defines "Obscene" to mean "containing a patently offensive description of or a solicitation to commit an ultimate sex act . . ." TEX. PENAL CODE § 42.07(b)(3).

regarding an officer visit scheduled with officer Kiel.[31]

Petitioner testified that he remembered sending the other text messages but denied sending the text in question.  He argued that other people have access to his phone.[32]  The hearing officer was in the best position to determine the credibility of each witness and the evidence, and concluded that Petitioner had sent the text and that it constituted a violation of the terms of Petitioner's parole.  This Court must presume that the hearing officer's findings of fact based on the credibility of the witnesses are correct absent clear and convincing evidence to the contrary.  *See* 28 U.S.C. § 2254(e)(1).  Because there is evidence to support the hearing officer's factual findings, Petitioner fails to show a legitimate claim for relief based on insufficient evidence.  *See Villarreal,* 985 F.2d at 839.

### 3.      Claims No. 5 & 7 Regarding the Hearing Procedures

Petitioner contends that his due process rights were violated because the witnesses, who were also his parole officers, functioned as the prosecutors in his preliminary hearing (Claim No. 5).  Petitioner also argues that Butler, the hearing officer, should not have been the hearing officer because he is a parole official. (Claim No. 7).

The United States Supreme Court has held that "[b]ecause parole revocation deprives the parolee not 'of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions,' States have wide latitude under the Constitution to structure parole revocation proceedings."  *Pa. Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 365–66 (1998) (quoting *Morrissey*, 408 U.S. at 480).  The State of Texas has adopted informal administrative parole revocation procedures as set forth in the Texas

---

[31] Docket Entry No. 10-1 (PRR) at 23-24.

[32] *Id.*

Government Code Chapter 508 and in Title 37, part 5 of the Texas Administrative Code. Further, parole proceedings are designed to be "'predictive and discretionary' as well as fact finding," rather than purely adversarial.  *See Gagnon v. Scarpelli,* 411 U.S. 778, 787 (1973) (quoting *Morrissey,* 408 U.S. at 480).

As stated above, Petitioner received the minimum requirements of due process at his hearings.  There is no merit to Petitioner's contention that the State, following its procedures, deprived Petitioner of due process by allowing the parole officers, who witnessed the unlawful behavior, to testify regarding the harassment charge.  *See, e.g., Gagnon,* 411 U.S. at 787.

Nor is there any merit to Petitioner's contention that his hearing officer was improper because he was a parole official.[33]  It is uncontroverted that the hearing officer was not Petitioner's parole officer; Kuhre was his parole officer until his case was transferred to Kiel. Petitioner does not raise a fact issue that the hearing officer was not qualified to preside over the hearing or that he was not neutral and detached.  *See, e.g., Villegas v. Stephens*, Civ. No. H-07-4483, 2014 WL 3966378, at *11 (S.D. Tex. Aug. 8, 2014) (petitioner failed to raise a fact issue on bias where hearing officer was employed by the Parole Board and petitioner's disagreements with the findings of the hearing officer did not constitute proof of prejudice).  As noted, Petitioner did not object to the neutrality of the hearing officer at the hearings.[34]

Further, Petitioner's reliance on *Morrissey* for the contention that a hearing officer may

---

[33] Respondent contends that Petitioner did not exhaust this claim and that it should be dismissed as procedurally barred.  Even if it were not exhausted, it lacks merit, as discussed above.  Petitioner's state court application mentions hearing officer Butler as a parole official who participated in the hearing as an accuser, but then he mentions the hearing officer in his federal petition only to the extent that "the parole officer is therefore not qualified as a hearing officer."  *See* Petition at 5; SHCR at 00007-08 (complaining that Butler was both the hearing officer and a "parole staff individual").  The Court therefore examines his claim regarding whether there was a due process violation where a hearing officer is also a parole official (but not Petitioner's parole officer).

[34] Docket Entry 10-1 (PRR) at 8.

not be a parole officer is unavailing.  Petitioner quotes from Justice Douglas's dissenting opinion in *Morrissey*; the controlling precedent in *Morrissey* held that—as is the case here—the hearing officer may be "*someone such as a parole officer other than the one who has made the report of parole violations or has recommended revocation*."  408 U.S. at 486 (majority op.) (emphasis added).

Moreover, to the extent that this claim was properly before the state court, the Texas Court of Criminal Appeals denied the application for writ of habeas corpus without written opinion, rejecting Petitioner's claim regarding the lack of neutrality of the hearing officer.  The Court finds that the state court proceedings did not result in an unreasonable application of Supreme Court precedent as set forth in *Morrissey*. Further, the proceedings did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, Petitioner is not entitled to relief for his claims regarding the procedures employed for his revocation proceedings.

### 4.    Claim No. 6: Lack of Appointed Counsel

The Constitution does not provide an absolute right to counsel at a parole revocation hearing, although due process may require that an attorney be appointed in a particular case.  *See Gagnon,* 411 U.S. at 787-91.  The decision to appoint counsel "must be made on a case-by-case basis in the exercise of a sound discretion" by the presiding parole official.  *Id.* at 790. Generally, "the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings."  *Id.*  Even so, counsel should be appointed where the parolee would have difficulty in presenting his case or when the facts or mitigating circumstances are so complex that they can only be presented by a trained advocate. *Id.*  "The need for counsel at a revocation hearing derives, not from the invariable attributes of

those hearings, but rather from the peculiarities of particular cases." *Id.* at 789.

In Petitioner's case, the essential facts underpinning the allegations against him were uncomplicated and straightforward: the issues were whether he used his phone to text an obscene message to his parole officer and whether his parole should be revoked as a result of the alleged offense. Petitioner does not establish that he had a colorable claim that he did not commit the offense as alleged. Petitioner also does not show that substantial reasons justify the violation and make revocation inappropriate. Nor does he show that the facts of the case are complicated and demand legal expertise to present. *See id.*

Furthermore, the record indicates that the hearing officer considered Petitioner's intelligence and his grasp of the issues and determined that no counsel was necessary because the case was straightforward and Petitioner could speak for himself. The hearing officer reported that he made this determination taking into consideration that Petitioner has no reported history of mental illness, has a General Education Diploma ("GED") and an I.Q. of 94, and that Petitioner was determined to be competent to choose to decline to participate in the hearing.[35]

In addition, Petitioner has not demonstrated that the hearing officer abused his discretion when he determined that counsel should not be appointed in this case. The hearing officer denied the appointment of counsel after the he considered Petitioner's understanding of the case and his ability to articulate a defense, as noted in the hearing officer's findings.

Moreover, the Texas Court of Criminal Appeals denied the application for writ of habeas corpus without written opinion, rejecting Petitioner's claim regarding the denial of appointment of counsel for his parole revocation proceedings. The Court finds that the state court proceedings did not result in an unreasonable application of Supreme Court precedent as set forth

---

[35] Docket Entry No. 10-1 (PRR) at 9.

in *Gagnon*. Further, the proceedings did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.   Accordingly, Petitioner's claim that he was unconstitutionally denied counsel is denied, and he is not entitled to relief on this ground.

## IV.    CERTIFICATE OF APPEALABILITY

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner. *See* 28 U.S.C. § 2253.  A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).   Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"   *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).  Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).  For reasons set forth above, this court concludes that jurists of reason would not debate whether any procedural ruling in this case was correct or whether Petitioner states a valid claim for relief.

Therefore, a certificate of appealability will not issue.

**V.      CONCLUSION AND ORDER**

Based on the foregoing, the court **ORDERS** as follows:

1.      Respondent's motion for summary judgment (Docket Entry No. 11) is

**GRANTED**.

2.      The habeas corpus petition is **DISMISSED** with prejudice.

3.      A certificate of appealability is **DENIED**.

4.      Petitioner's Motion for Entry of Order for Release from Custody (Docket Entry

No. 6); Motion for Settlement (Docket Entry No. 8); Motion for Summary

Judgment (Docket Entry No. 14); Motion for Discovery and Motion for an

Evidentiary Hearing (Docket Entry No. 16); Motion for Judgment (Docket Entry

No. 17); Motion for Relief under 28 U.S.C. § 2255 (Docket Entry No. 18); and

Motion for Relief (Docket Entry No. 23) are **DENIED**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Houston, Texas, this 30th day of September, 2016.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE